[S. F. No. 14766. In Bank.—April 9, 1934.]

BANKS J. WILDMAN, Respondent, v. MOE–BRIDGES COMPANY (a Corporation), Appellant.

Wright & Wright & Larson for Appellant.

C. H. Sooy for Respondent.

PRESTON, J.—Defendant, during the years 1923, 1924 and 1925, was engaged in the manufacture and sale of household fixtures and hardware, with home office at Milwaukee, Wisconsin, and plaintiff was sales manager for its western division, or San Francisco branch, under contract to receive a stipulated monthly compensation, plus ten per cent of the net profits of the branch, payable at the end of each year. In the matter of arriving at a satisfactory cost basis for merchandise sold by the branch, upon which might be computed the 10 per cent net profit, there soon arose a controversy of long duration, which culminated in the bringing of this action by plaintiff to recover sums alleged to be due him from defendant.

The sole issue in the cause was clearly defined by a stipulation of the parties which provided that if the court found, in accordance with the contention of plaintiff, that the profits of said branch, during said period and under the agreement between the parties, should be based upon the factory cost of the merchandise sold by the branch, excluding from said factory cost specified items of indirect, general and administrative expenses of the principal, central, main offices of defendant at Milwaukee, not incurred by the branch (hereinafter referred to as "items"), then, according to a stipu-

lated computation, there would be due and payable to plaintiff upon said basis the sum of $6,811.50, for which he should have judgment, with interest thereon. The stipulation further provided that if the court found, in accordance with the contention of defendant and under the agreement between the parties, that the profits of said branch should be based upon the factory cost of the merchandise sold by the branch during said period and that said items should be included in or added to said factory cost, or included in the deductions from the gross profits of the branch, then, according to a stipulated computation, defendant would be entitled to judgment dismissing the action.

Upon the trial various documents and correspondence between the parties over the period involved were introduced in evidence; plaintiff testified and defendant offered depositions taken prior to trial, together with additional documentary evidence. On the above issue, the court found that in April, 1923, defendant entered into an oral agreement with plaintiff, thereafter partially reduced to writing by exchange of letters between the parties, under which the profits of said branch were to be based on the prime factory cost of merchandise sold by it, excluding therefrom said items. Judgment in accordance with this finding, and following the terms of said stipulation, was thereafter entered for plaintiff and defendant appealed.

Appellant contends that we are required to interpret the terms of its contract with respondent to determine whether the provisions for payment of said 10 per cent net profit contemplated charging the branch, in computation thereof, with said items, as part of the cost of the goods sold by it. In this connection, appellant claims that all the terms of the contract, as orally agreed upon by the parties, were later incorporated in confirmatory letters exchanged by them, which merely stated that respondent would receive a sum equivalent to 10 per cent of the net profits of the branch, without specifying upon what basis said profits were to be computed. In this situation, appellant urges, we must give the term "net profits" its usual definition and significance, viewed in the light of the interpretation which the parties, during their conduct of the business, placed upon it and, so doing, we must determine this appeal in accordance with appellant's claims.

Respondent asserts that no question of interpretation of the contract, or of said term, is involved on this appeal; that the sole question here is whether the evidence sufficiently supports the findings and judgment. He contends that the issue in the court below was purely one of fact, to wit: Did the parties agree that the merchandise should be charged to the branch at prime factory cost only, or did they agree that to the latter cost could be added the aforesaid items? What was the agreement between the parties? Was it partially or fully reduced to writing? Is there evidence to support the conclusion of the court below on these questions of fact?

Respondent's statement of the case seems to be correct. As above stated, the court found that appellant entered into an oral agreement with respondent, which was thereafter *partially* reduced to writing by exchange of letters between them. The evidence abundantly supports this, and all other findings and the judgment, as will now be shown.

Appellant company was organized in 1919. In 1920 respondent undertook pioneering work for it on the west coast at a minimum compensation by representing it along with other companies. Considerable business was developed, and in 1922 the San Francisco branch was established, with respondent as its manager, devoting himself exclusively to appellant's business under a five-year written contract of employment, executed January 1, 1922, which provided that he should receive, in addition to a drawing account, compensation based on a straight monthly commission of 5 per cent on total net shipments to the territory in excess of $12,000 a month. This contract proved profitable for respondent but burdensome to appellant; hence in 1923 respondent was called to the home office and was asked to and did surrender it for the contract here involved, the terms of which were reached by oral agreement during his stay at said home office. After his return to San Francisco he received the letter of April 3, 1923, which, appellant alleges, sets forth all of the terms of the new contract of employment. We cannot concur in this view as the letter does not purport to have any such scope. It states:

" . . . this will confirm the new arrangement accepted as mutually satisfactory and the following points are enumerated here merely as a matter of record to preclude any

possible misunderstanding in the future.'' It then enumerates certain points: That the new arrangement is effective April 1, 1923; that respondent will return the old contract for cancellation; that he will receive a flat weekly salary of $100, plus automobile allowance, and that he will also receive a ''sum equivalent to ten per cent of the net profits earned by the San Francisco Branch, this being payable in a lump sum after . . . December 31st each year''. Respondent did not reply to this letter until May 17th, when he wrote that the new arrangement ''looked all right''; that he did not like the idea of not receiving his profits until the end of the year, but supposed it was all right. ·

The tenor of these letters indicates clearly that no attempt was made therein to make a complete statement of the terms and working arrangements of the oral agreement of the parties. This view is confirmed by an examination of the later correspondence, which is quite voluminous. It shows that appellant tried first one method and then another of figuring the cost basis for merchandise shipped to the branch, at first excluding but later including the aforesaid items, and that the result of these frequent changes was that although respondent greatly increased the volume of branch business, his profit grew smaller instead of larger, or vanished altogether. Furthermore, as he received an accounting of the net profit due him, if any, only at the end of the year, changes in appellant's methods of computation and accounting were more or less concealed from him over long periods, and correspondence with respect thereto was intermittent and unsatisfactory because of absorption of his time by pressure of the rapidly expanding branch business. In other words, there is no doubt that appellant imposed upon respondent's trust and loyalty and left him somewhat in a state of mystification relative to accounting at the head office, until at last his suspicions that he was being mistreated were thoroughly aroused and he protested vigorously and expressed his indignation at having been induced to surrender a profitable contract for one rendered uncertain and apparently subject to control by appellant through manipulation of or changes in its accounting system.

The trial court was abundantly justified in believing respondent's testimony that one of the terms of his oral contract with appellant, agreed upon during his visit to the

home office, was that the branch was to be charged only with prime factory costs (cost of labor to appellant in the manufacture of goods plus 135 per cent), and that the said "items" were not to be added thereto.

We are satisfied that the findings and judgment have ample support in the evidence.

The judgment is affirmed.

Seawell, J., Langdon, J., Curtis, J., Shenk, J., Thompson, J., and Waste, C. J., concurred.